The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman and the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners holding and enters the following Opinion and Award.
Subsequent to the date of oral arguments before the Full Commission, plaintiff submitted a Motion to Take Additional Evidence, which was received on 14 August 2000. Defendants Response in opposition to plaintiffs motion was received on 23 August 2000. After careful consideration, the Full Commission finds that plaintiff has failed to show good ground in support of her motion, which is hereby DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 6 April 1999 as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The appointment of any party who appears in a representative capacity is valid and that said party has duly qualified and has authority to appear in the capacity in which said party is designated, and that no further proof of appointment or capacity shall be required.
4. The parties are subject to and bound by the North Carolina Workers Compensation Act.
5. An employee-employer relationship existed between plaintiff and defendant-employer on 1 January 1998.
6. Defendant-employer was insured by Wausau Insurance Company under the terms and provisions of the Act on 1 January 1998.
7. Plaintiffs average weekly wage on 1 January 1998 was $197.75, yielding a compensation rate of $131.82.
8. Plaintiff sustained a compensable injury by accident when she slipped and fell at defendant-employers store on 1 January 1998.
9. The Pre-Trial Order, filed 6 April 1999 is incorporated by reference.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff, who was forty-four years old on the date of the hearing before the Deputy Commissioner on 6 April 1999, began working for defendant-employer in May 1997 as a cashier at its fast food restaurant. Her job duties included taking food orders from customers, entering the information into the register, getting the food ordered and taking payment for it.
2. Prior to her employment with defendant-employer, plaintiff had experienced prior knee problems and had undergone surgical procedures. In 1974, a patellectomy was performed on plaintiff to remove both of her kneecaps. In April 1996, Dr. Walton Curl, an orthopedic surgeon at Bowman Gray, performed surgery to remove cartilage from her right knee. During the months following this last surgical procedure, plaintiff experienced weakness in her right knee, a common problem in patients whose kneecaps have been removed. Dr. Curl prescribed a hinged brace for her to address the problem and continued to follow her recovery until February 1997, when he indicated that plaintiff would be disabled for the next six months due to persistent knee symptoms.
3. Subsequent to February 1997, plaintiffs knee condition improved such that she was able to accept employment with defendant-employer in May 1997. However, on 8 July 1997 she returned to Dr. Curl with a history of having stepped into a hole several months previously. Plaintiff complained of left ankle pain, swelling in both knees and increased pain and stiffness in her right knee. With respect to her right knee, Dr. Curl diagnosed her condition as degenerative joint disease and treated her conservatively. On 6 August 1997 plaintiff returned to Dr. Curl complaining of neck, low back and right knee pain after having slipped at work the previous Saturday. Dr. Curl noted that she had advanced degeneration of her right knee with some valgus deformity and he injected her knee and provided further conservative treatment.
4. On 24 October 1997, plaintiff underwent a functional capacity evaluation. This evaluation revealed that she was capable of performing full time work with occasional lifting up to fifteen pounds, occasional sitting and climbing, frequent standing, walking, bending and reaching but no kneeling, squatting or crawling. The therapist who performed the evaluation also recommended that plaintiff be allowed a ten-minute sitting break after standing for an hour.
5. Dr. Curl next saw plaintiff on 29 October 1997, and according to one office note, he was going to release her to return to work for defendant-employer without restrictions. However, the actual return to work slip that was provided by Dr. Curl that same day specified that plaintiff was to do no bending, stooping or climbing.
6. The Full Commission gives greater weight to the actual return to work slip provided by Dr. Curl as opposed to his examination notes on the issue of plaintiffs work restrictions.
7. Plaintiff did return to work for defendant-employer in her former position. In November or December 1997, plaintiff had another incident where she twisted her knee at work. Dr. Curl examined her on 3 December 1997 for a right knee strain. As a result of this incident, plaintiff was unable to work for a couple of days but then continued to work on a full time basis until the date of the injury giving rise to this claim.
8. On 1 January 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she slipped on a greasy floor and fell at work. Plaintiff was examined at Prime Care that same day for complaints of right knee pain and inability to bear weight on that leg. Subsequently, she also reported trapezius pain and spasm. The physicians at Prime Care treated her conservatively with medication, a knee immobilizer and rest.
9. Plaintiffs symptoms persisted and on 21 January 1998 she was referred to Dr. Curl for evaluation and treatment. Dr. Curl examined her on 9 February 1998 and diagnosed plaintiff as having sustained a knee contusion as well as a neck strain as the result of the 1 January 1998 fall at work. Dr. Curl advised plaintiff to continue with physical therapy and rehabilitation for her knee and neck and released her to return to part time work with restrictions. Dr. Curl opined that her 1 January 1998 injury by accident had caused her neck strain and had aggravated her pre-existing knee condition.
10. Plaintiff then returned to work for defendant-employer on a part-time basis and worked until her termination on 11 March 1998. On 9 March 1998, plaintiffs cash register was short by $44.83. She had received two written warnings in December for being short $21.00 and $43.24. Although the second warning stated that she would be given a week off without pay if it happened again, defendant-employer decided to terminate plaintiff after this third occurrence in direct contradiction to its written company policy. Mr. Billy Scales, a supervisor for defendant-employer, confirmed this in his testimony and additionally testified that the fair course of action in accordance with company policy would have been to give plaintiff a week off without pay rather than terminating her employment.
11. By the time plaintiff returned to Dr. Curl on 25 March 1998, her physical therapist had written the doctor advising that despite therapy sessions, plaintiff had increasing complaints. A qualitative interdisciplinary evaluation was then recommended. Plaintiff was examined by Dr. Walter Davis, a physiatrist, on 19 May 1998. Dr. Davis did not consider plaintiff to be a candidate for multidisciplinary rehabilitation or for any other further medical treatment. In his opinion, plaintiff had reached maximum medical improvement having sustained no addition disability rating impairments to her knee from her latest injury, but that she had sustained a three percent (3%) permanent partial disability rating to her neck. Dr. Davis released plaintiff to return to work in a light duty capacity.
12. On 15 June 1998, plaintiff returned to Dr. Curl, who noted that her neck strain had resolved, but that she continued to experience knee problems as well as a right rotator cuff strain. Dr. Curl concluded that she had reached maximum medical improvement and rated her with a one percent (1%) permanent partial disability to the right arm and a five percent (5%) permanent partial disability to the right leg. He specified restrictions of no bending, stooping, climbing, reaching overhead or lifting more than fifteen (15) pounds.
13. On 29 July 1998, plaintiff returned to Dr. Curl and reported having fallen approximately three weeks earlier while walking at home when her knee gave way. Plaintiff also reported shoulder problems at that time. Dr. Curl opined, as is borne out in his deposition testimony, that plaintiffs ongoing problem with knee buckling and her fall on 29 July 1998 were directly and causally related to her 1 January 1998 injury by accident.
14. Dr. Curl next examined plaintiff on 9 September 1998. At that time, plaintiff continued to experience pain in her right shoulder and buckling and swelling of her knee. Dr. Curl diagnosed chronic rotator cuff tendonitis regarding her shoulder and significant valgus deformity of her knee. Dr. Curl prescribed a hinged knee brace to improve the stability of plaintiffs knee and opined that her shoulder problems were related to her initial fall.
15. In December 1998, plaintiff experienced another episode where her knee gave way, causing her to fall onto her right hand, injuring her wrist. Upon examining plaintiff on 9 December 1998, Dr. Curl found a possible scaphoid fracture in her wrist, for which he placed her in a long arm cast, and also ordered a custom built knee brace. Because of continued problems with her wrist, Dr. Curl referred plaintiff to Dr. Gary Poehling. Plaintiff continued to receive treatments for her wrist and regional pain syndrome as of the date of hearing before the Deputy Commissioner on 6 April 1999.
16. Defendants admitted liability for plaintiffs 1 January 1998 injury by accident and paid temporary total disability compensation to her until she returned to work in February 1998. Defendants then began paying compensation for temporary partial disability and paid such compensation following her termination. However, there was no stipulation regarding compensation paid, so the specific amount of temporary partial disability compensation which was paid cannot be determined.
17. On 9 February 1998, Dr. Curl released plaintiff to return to work with defendant-employer in a light duty sedentary position for only four hours per day. Dr. Curl also assigned restrictions of no lifting over ten pounds, no bending, stooping, climbing or reaching overhead. Furthermore, when he released plaintiff to return to work with these restrictions, Dr. Curl was of the belief that the job she would be returning to was sedentary and that she would be able to sit for the performance of much of her duties, having to walk around only occasionally.
18. Plaintiffs testimony regarding her duties and associated problems after returning to work in the cashier position is accepted as credible. Given the restrictions under which Dr. Curl had released plaintiff to return to work, the cashier position provided to her by defendant-employer was not suitable. Any potential modifications defendant-employer could have made at some point in the future to this position are irrelevant to the issue of whether the job, as it was required to be performed upon plaintiffs actual return to work, was suitable.
19. Defendants have failed to produce credible evidence that plaintiffs termination on 11 March 1998 was for misconduct or fault for which a non-disabled employee would also have been terminated.
20. Given his extensive treatment history with plaintiff, the opinions of Dr. Curl regarding the causal connection between her 1 January 1998 injury by accident and her subsequent falls and injuries is given greater weight as than those of Dr. Davis.
21. Plaintiffs 1 January 1998 injury by accident materially aggravated her pre-existing knee condition. Furthermore, the injuries plaintiff sustained to her shoulder, her rotator cuff tendonitis, the scaphoid fracture of her wrist and regional pain syndrome as the result of the incidents on 29 July 1998, 9 September 1998 and early December 1998 were direct and natural consequence of her 1 January 1998 injury by accident.
22. Plaintiff has not reached maximum medical improvement with regards to her wrist and the scaphoid fracture.
23. As the result of her 1 January 1998 injury by accident and related conditions, plaintiff has been unable to earn wages in her former position with defendant-employer or in any other employment from 11 March 1998 through the present and continuing.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs 1 January 1998 injury by accident materially aggravated her pre-existing knee condition. G.S. 97-2(6). Furthermore, the injuries plaintiff sustained to her shoulder, her rotator cuff tendonitis, the scaphoid fracture of her wrist and regional pain syndrome as the result of the incidents on 29 July 1998, 9 September 1998 and early December 1998 were direct and natural consequence of her 1 January 1998 injury by accident. Id.
2. Given the nature of the restrictions under which Dr. Curl had released plaintiff to return to work, the cashier position provided to her by defendant-employer was not suitable. G.S. 97-32. Additionally, because defendants have failed to produce credible evidence that plaintiffs termination on 11 March 1998 was for misconduct or fault for which a non-disabled employee would also have been terminated, plaintiff did not constructively refuse employment. Id.; Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
3. As the result of her 1 January 1998 injury by accident and related conditions, plaintiff is entitled to have defendants pay to her ongoing total disability compensation at the rate of $131.82. per week for the period of 11 March 1998 through the present and continuing until such time as she returns to work or until further order of the Commission. G.S.97-29.
4. As the result of her 1 January 1998 injury by accident and related conditions, plaintiff is entitled to have defendants pay to her temporary partial disability at the rate of two-thirds difference between her former average weekly wage of $197.75 and the weekly wages she was able to earn from 10 February 1998 through 15 June 1998. G.S. 97-30. Although there is some evidence that some portion of these benefits have been paid, the evidence is insufficient upon which to determine the specific amounts paid and what amount remains unpaid, if any. Id.
5. As the result of her 1 January 1998 injury by accident and related conditions, plaintiff is entitled to have defendants pay for all related medical expenses incurred. G.S. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff ongoing total disability compensation at the rate of $131.82. per week for the period of 11 March 1998 through the present and continuing until such time as she returns to work or until further order of the Commission. From the amount shaving accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
2. Defendants shall pay to plaintiff all unpaid portions of the temporary partial disability compensation to which she is entitled. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorneys fee approved herein.
3. Defendants shall pay for all medical expenses incurred by plaintiff as the result of her 1 January 1998 injury by accident and related conditions.
4. A reasonable attorneys fee of twenty-five percent of the compensation awarded herein is approved for counsel for plaintiff. From the compensation which has accrued, this fee shall be deducted from the amount due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall pay the costs.
 S/____________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/________________ RENE C. RIGGSBEE COMMISSIONER